**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**STEVEN DENNIS YOUNG,**

      **Plaintiff,**

**vs.**                                        **Case No. 4:08cv44-SPM/WCS**

**WALTER A. McNEIL,**

      **Defendant.**

_____/

**<u>SECOND REPORT AND RECOMMENDATION</u>**

Plaintiff, a *pro se* prisoner, filed a civil rights case on January 28, 2008.  Doc. 1.

Service was carried out, doc. 10, Defendant filed an Answer, doc. 15, and discovery

ended on January 14, 2009.  Doc. 16.  On January 29, 2009, Defendant filed a motion

for summary judgment, doc. 26, and Plaintiff was advised of his obligation to respond

pursuant to Rule 56.  Doc. 27.  After being granted an extension of time to file his

response, docs. 31 and 33, the May 11, 2009, deadline passed without Plaintiff filing a

response.  Defendant's motion for summary judgment is, therefore, unopposed.

**I.      Allegations of the Complaint, doc. 1**

Plaintiff complains that in August of 2007, the Secretary of the Florida

Department of Corrections rescinded the Jewish Dietary Accommodation Program

(hereinafter "JDAP") which had provided Plaintiff and other Jewish prisoners with
Kosher foods.  Doc. 1, p. 7.  Plaintiff alleged that the creation of a "pork-free diet" does
not remedy the needs of Jewish prisoners and forces Plaintiff to eat unclean foods.  *Id.*,
at 7-8.  Plaintiff contends the elimination of the JDAP violates his First Amendment right
to practice his religious beliefs, his Eighth Amendment right to be free from cruel and
unusual punishment, and the Equal Protection Clause of the Fourteenth Amendment.
*Id.*, at 8.

## II.    Legal standards governing a motion for summary judgment

On a motion for summary judgment, the Defendant initially has the burden to
demonstrate an absence of evidence to support the nonmoving party's case.  <u>Celotex
Corporation v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d
265 (1986).  If accomplished, the burden shifts to Plaintiff to come forward with
evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An
issue of fact is "material" if it could affect the outcome of the case.  <u>Hickson Corp. v.
Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).
Plaintiff must show more than the existence of a "metaphysical doubt" regarding the
material facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475
U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of
evidence is insufficient.  The court must decide "whether the evidence presents a
sufficient disagreement to require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law."  <u>Hickson Corp.</u>, 357 F.3d at 1260, *quoting*
<u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202

(1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried"  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there *is* a genuine issue to be tried, using the same format.  Finally, the Local Rule provides that facts set forth in Defendant's statement will be deemed admitted (if supported by record evidence) unless controverted by Plaintiff's statement.

**III.    The relevant Rule 56(e) evidence**

On August 16, 2007, the Florida Department of Corrections eliminated the JDAP in its entirety.  Doc. 26, p. 2; *see also* Ex. A.  There are now four possible meal plans for inmates: "regular, alternate entree, vegan, and management."  Doc. 26, Ex. B.  Pursuant to the Department's policy, if an inmate " wishes to avoid the regular meal program in accordance with his religious beliefs," he can have an "alternative entree program which provides a strict lacto-ovo or lacto-vegetarian" meal.  Doc. 26, Ex. B.  An inmate could also choose the "vegan meal program which provides a strict vegetarian meals [sic], through which one can avoid all animal products."  *Id.*  "Pork and pork by-products have been eliminated from all of the Department's menu plans."  Doc. 26, Ex. B; *see also* doc. 26, p. 2.

Defendant has put forth evidence showing it would "be cost-prohibitive for the" Department to continue providing "kosher meals to inmates who claim a religious dietary need; be they Jewish adherents or otherwise."  Doc. 26, p. 3; *see* Exhibits A and B.  In the affidavit of Kathleen Fuhrman, the Department's Public Health Nutrition Program Manager, she explains that it "would be extremely cost prohibitive to provide inmates with kosher meals" such as sought by Plaintiff in this case.  Doc. 26, Ex. A, p. 2.  Doing so would require either purchasing and maintaining separate "kosher frozen or shelf stable entrees" or establishing "separate kitchens for preparation of kosher diets."  *Id.*  The administrative and financial burdens for doing either "are insurmountable."  *Id.*  Moreover, in July of 0208, the Food Services budget "was reduced by 9.5 million dollars."  *Id.*  The budget created an obvious need to reduce costs.  *Id.*  If the Department attempted to implement option one and use Kosher frozen or shelf stable

food entrees, it "would cost an average of $4.00-$4.50 per meal" and that does not

include having to add even more food items to "ensure nutritional adequate and be

equivalent in calories to the regular menu."  Doc. 26, Ex. A, p. 2.  "The yearly cost for

feeding one inmate these meals would be $5,475.00 per year compared to the $952.65

- $974.18 per year for an inmate receiving the meals prepared by the Department."  *Id.*,

at 3.  The Department had previously attempted to use option two by creating the

Jewish Dietary Accommodation Program.  *Id.*  However, the costs of providing separate

kitchen facilities "skyrocketed since August [of] 2007, the date that the Department's

Jewish Dietary Accommodation program was rescinded."  *Id.*  It is suggested "that the

Department would need to add at least an additional 45 kitchens, or $3,510,000 in

construction costs" to accommodate kosher kitchens.  Doc. 26, Ex. B.  Additionally, after

constructions costs, there would still be the need to purchase equipment for each

kitchen would is estimated "to be approximately $42,799 per kitchen."  *Id.*

Defendant also bases the decision to elimination the JDAP due to "serious

security issues including: the perception of preferential treatment for inmates receiving

them; claims by inmates of adherence to specific religious beliefs requiring kosher food

in an attempt to manipulate the system for assignments to institutions for gang related

purposes; retaliation against inmates receiving kosher meals by other inmates; [and]

increased security staffing requirements to maintain separate kosher food preparation

areas."  Doc. 26, p. 3; *see* Ex. C.  In the affidavit presented by James Upchurch, the

Chief of the Bureau of Security Operations, he explained that providing a special kosher

"diet would be seen by the rest of the inmates as preferential treatment resulting in a

negative impact on inmate morale and subsequently the institutional environment and

orderly operation."  Doc. 26, Ex. C, p. 2.  Furthermore, "if the kosher diet is believed to provide better quality and/or more food," then inmates have attempted to claim certain religious beliefs and manipulate the system simply to receive a "preferential diet."  *Id.* Such efforts occurred while the Department was operating the JDAP.  *Id.*  Additionally, "if inmates believed that the higher cost to provide the kosher diet was somehow impacting in a negative way the quality and quantity of the food being served to them in the general population" it could lead to retaliation against the kosher inmates and disruption to the overall operation of the institution.  *Id.*, at 3.  Furthermore, creating separate kosher kitchens would require additional staff to be present, which would have a significant impact on security and could impose even more costs as additional staff might be required is security were jeopardized.  *Id.*

## IV.   Analysis

Defendant contends Plaintiff has failed to state a claim and summary judgment should be granted in his favor.  Doc. 26, pp. 4-7, 14-17.  As additional defenses, Defendant raises immunity from damages under the Eleventh Amendment, the preclusion of compensatory or punitive damages under 42 U.S.C. § 1997e(e), and exhaustion of administrative remedies.  Doc. 26, pp. 3, 7-14.

### a.   Exhaustion

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory,

whether the claim is brought pursuant to § 1983 or <u>Bivens</u>.  <u>Alexander v. Hawk</u>, 159

F.3d 1321, 1324-26 (11th Cir. 1998).  The exhaustion requirement of § 1997e(a) is not

jurisdictional, however.  <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert.*

*denied*, 129 S.Ct. 733 (2008) (citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378,

2392, 165 L.Ed.2d 368 (2006)).  There is no discretion to waive this requirement or

provide continuances of prisoner litigation in the event that a claim has not been

exhausted prior to filing.  <u>Alexander</u>, 159 F.3d at 1325; *see also* <u>Porter v. Nussle</u>, 534

U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some

other wrong."); <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an

inmate must "provide with his grievance all relevant information reasonably available to

him" but he cannot be required to name individuals responsible for challenged conduct

when he could not yet identify those persons).  The Court may not consider the

adequacy or futility of administrative remedies, but only the availability of such.

<u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing* <u>Alexander</u>, 159

F.3d at 1323.  Even where an inmate seeks only monetary damages in a civil rights

case, he must complete the prison administrative process if it could provide some sort

of relief on the complaint although no money could be given administratively.  <u>Booth v.</u>

<u>Churner</u>, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  "Requiring

exhaustion allows prison officials an opportunity to resolve disputes concerning the

exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S.

199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[1].

A prisoner must also comply with the process set forth and established by the

grievance procedures.  See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  In

other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA

exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81,

93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying

with the specific prison grievance requirements, not judicially imposed requirements).  If

a grievance is denied as untimely, a prisoner must appeal the denial of the grievance.

See Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999)(noting Georgia's inmate

grievance procedures allow "the grievance coordinator to waive the time period for filing

a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373.  If one claim is

unexhausted, the Court may separate that claim out and proceed on only those claims

that have been exhausted.  Brown, 212 F.3d at 1206, n.1; Jones, 549 U.S. at 223, 127

S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those

unexhausted "claims," not an entire "action.").

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his

available administrative remedies."  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th

Cir. 2008), relying on Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d

798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the

---

[1] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.").

PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").  Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. Bryant, 530 F.3d at 1373-76.

        In this case, it is of no consequence that Defendant raises the exhaustion issue in the motion to dismiss because the argument raised is flawed.  Defendant asserts that Plaintiff has "failed to properly exhaust his claims regarding his Eighth and Fourteenth Amendment claims."  Doc. 26, p. 8.  Defendant concedes that Plaintiff properly exhausted the First Amendment claim concerning the elimination of the JDAP.  *Id.*; *see also* p. 10, n.2, and p. 11.  Thus, the argument from Defendant is that Plaintiff should have alerted prison officials that he was also challenging the elimination of the JDAP on the basis of cruel and unusual punishment (the Eighth Amendment claim) and under the Equal Protection Clause (Fourteenth Amendment).  *Id.,* at 8.  Defendant argues that prison officials "are not clairvoyants and cannot address issues which are not reasonably alleged by inmates."  *Id.*, at 11.

The PLRA only requires a prisoner to exhaust his "available administrative remedies."  Turner v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008).  It is well established that the basis for the exhaustion is to give prison officials a fair opportunity to address a problem pointed out to them, and to resolve a dispute "before being haled into court."  Jones v. Bock, 549 U.S. at 204-209, 127 S.Ct. at 914.  Plaintiff in this case *did* point out the problem to prison officials – Plaintiff complained about the elimination of the JDAP.  Thus, Plaintiff alerted to prison officials to a problem and sought correction of that issue before turning to the judicial forum.  That the elimination of the JDAP might form the basis of several different constitutional challenges does not alter the manner in which Plaintiff was required to present his dispute to the Department. Defendant has not pointed to a regulation that requires an inmate to allege the elements of a legal claim or present the legal theory of his case.  The Department simply requires an inmate to file a written complaint "concerning an incident, procedure, or condition within an institution . . . ."  FLA. ADMIN. CODE R. 33-103.002(7).  Plaintiff informed the Defendant that he was challenging the elimination of the JDAP, he need not do more. Defendant has not shown that a battalion of attorneys sit ready to review prisoner grievances for legal claims in the grievance process, and that the grievance rules require the presentation of each possible legal theory involved in each issue raised. Thus, because Plaintiff presented his issue through each step of the grievance process, he did all that was required and the purposes of the exhaustion requirement were fulfilled.  The Department had the opportunity to address the problem that forms the basis of this lawsuit.

**b.     First Amendment free exercise claim**

The First Amendment, made applicable to the States through the Fourteenth

Amendment, "safeguards the free exercise of [one's] chosen form of religion."  Cantwell

v. State of Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940).

While prisoners retain First Amendment rights, including the First Amendment right of

free exercise of religion, *see* Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263

(1972) (*per curiam*), prison regulations or policies "alleged to infringe constitutional

rights are judged under a 'reasonableness' test less restrictive than that ordinarily

applied to alleged infringements of fundamental constitutional rights."  O'Lone v. Estate

of Shabazz, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987) (holding

that the Turner v. Safley standard of review is applicable to claims that an inmate's free

exercise rights have been violated).[2]  O'Lone continued the Court's admonition to give

respect and deference to the judgment of prison administrators even in First

Amendment challenges raised within the confines of prisons or jails.  482 U.S. at 350,

107 S.Ct. at 2405.

The most important case on the exercise of religious rights in prison is O'Lone v.

Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).  The case

involved a Muslim prisoner who was assigned to work outside the prison.  He wanted to

be brought back inside the prison at noon on Fridays so that he could attend the

---

[2] In City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624
1997), the Court held that the Religious Freedom Restoration Act, (RFRA), 42 U.S.C. §
2000bb, *et seq.*, was unconstitutional as exceeding Congress's authority under the
Constitution.  That decision required returning to the standard of review employed in
Employment Div., Dept. of Human Resources v. Smith, 494 U.S. 872 (1990), and in the
context of prison cases, O'Lone v. Shabazz, *supra*.

congregational prayer required of him, known as Jumu'ah.  482 U.S. at 345-346, 107

S.Ct. at 2402-2403.  The Court held that while prisoners retain First Amendment rights,

"[l]awful incarceration brings about the necessary withdrawal or limitation of many

privileges and rights, a retraction justified by the considerations underlying our penal

system."  482 U.S. at 348, 107 S.Ct. at 2404, *quoting* Price v. Johnston, 334 U.S. 266,

285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).  The Court said:

> In considering the appropriate balance of these factors, we have often
> said that evaluation of penological objectives is committed to the
> considered judgment of prison administrators, "who are actually charged
> with and trained in the running of the particular institution under
> examination."  To ensure that courts afford appropriate deference to
> prison officials, we have determined that prison regulations alleged to
> infringe constitutional rights are judged under a "reasonableness" test less
> restrictive than that ordinarily applied to alleged infringements of
> fundamental constitutional rights.  We recently restated the proper
> standard:  "[W]hen a prison regulation impinges on inmates' constitutional
> rights, the regulation is valid if it is reasonably related to legitimate
> penological interests."  This approach ensures the ability of corrections
> officials "to anticipate security problems and to adopt innovative solutions
> to the intractable problems of prison administration," and avoids
> unnecessary intrusion of the judiciary into problems particularly ill suited to
> "resolution by decree."

482 U.S. at 349-350, 107 S.Ct. at 2404-2405 (citations, including Turner v. Safley, 482

U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), and footnotes omitted).

Accordingly, "[a] prison regulation, even though it infringes the inmate's

constitutional rights, is an actionable constitutional violation only if the regulation is

unreasonable."  Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000), *cert. denied*, 532

U.S. 932 (2001) (holding that the Department of Corrections policy to not permit a

"dual-name" on inmate identification card violated inmate's right to the free exercise of

religion by denying him his Muslim identity and was unreasonable under Turner).

It is accepted that the elimination of the JDAP substantially burden Plaintiff's exercise of his religious faith.  The question is whether, applying the reasonableness test of <u>Turner v. Safley</u>, can the position of the Department be upheld as reasonably related to a legitimate penological interest.  <u>O'Lone</u>, 482 U.S. at 349, 107 S. Ct. at 2404-05.

The <u>Turner</u> standard employs four factors to determine the reasonableness of a challenged prison policy.  "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." <u>Turner</u>, 482 U.S. at 89, 107 S. Ct. at 2262, *citing* <u>Block v. Rutherford</u>, 468 U.S. 576, 586, 104 S. Ct. 3227, 3232, 82 L. Ed. 2d 438 (1984).  If the "asserted goal is so remote" from the regulation such that it appears "arbitrary or irrational" or if the "governmental objective" is not a legitimate and neutral one," the regulation or policy cannot be sustained as constitutional.  482 U.S. at 89-90, 107 S. Ct. at 2262.  The remaining three factors consider:  "(2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) 'the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and (4) whether there are 'ready alternatives' available 'that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.'" <u>Spies v. Voinovich</u>, 173 F.3d 398, 403 (6th Cir. 1999), *quoting* <u>Turner</u>, 482 U.S. at 90-91, 107 S. Ct. 2254.  The Court is "not required to weigh evenly, or even consider explicitly, each of the four Turner factors."  <u>Spies</u>, 173 F.3d at 403, *citing* <u>Scott v. Mississippi Department of Corrections</u>, 961 F.2d 77, 80 (5th Cir. 1992).

Here, Defendant has shown a "valid, rational connection" in the elimination of the JDAP and the legitimate governmental interest of budgetary concerns and logistical constrains.  Defendant has also shown a legitimate interest in security, and minimizing the appearance of special privileges for certain classes of inmates.  Defendant has shown valid concerns which are not remote, removed, arbitrary, or disconnected from the elimination of the JDAP.  Moreover, Defendant has shown that Jewish inmates have alternatives open to them in selecting a meal plan, and the alternate plans would appear to minimize impact on Plaintiff's First Amendment rights.  The evidence presented here, one-sided though it is, reveals that accommodation of Plaintiff's desire to bring back the JDAP would negatively impact institutional safety and be detrimental to the allocation of prison resources.  The reasonableness test, therefore, is favorable to Defendant and he should prevail on the First Amendment claim.  Summary judgment should be granted to Defendant on the First Amendment claim.

c.    **Eighth Amendment Claim**

The United States Constitution does not require "comfortable prisons" with all the amenities, but it requires that prisons not be "inhumane."  Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003), *citing* Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994).  The conditions of prison life and the treatment of prisoners is governed by the Eighth Amendment, which prohibits cruel and unusual punishment.  Farrow, 320 F.3d at 1242-43, *citing* Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993).  In general, "prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain' "  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir.

2004), *quoting* <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

A two-part analysis governs Eighth Amendment challenges to conditions of confinement.  <u>Chandler</u>, 379 F.3d at 1289.  "First, under the 'objective component,' a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), *cited in* <u>Chandler</u>, 379 F.3d at 1289.  The challenged condition must be "extreme."  *Id.,* at 9, 112 S.Ct. at 1000.  The second part of the analysis requires prisoners to show that prison officials "acted with a sufficiently culpable state of mind" regarding the condition at issue.  <u>Hudson</u>, 503 U.S. at 8, 112 S.Ct. at 999 (marks and citation omitted); 379 F.3d at 1289.  "The proper standard is that of deliberate indifference."  <u>Chandler</u>, 379 F.3d at 1289., *citing* <u>Wilson v. Seiter</u>, 501 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991).

Here, regardless of the subjective factors, the objective factors prove fatal to Plaintiff's claim.  The elimination of the JDAP is not a "serious" or "extreme" condition.  It is also not a punishment, but simply a condition of confinement.  The failure to provide kosher meals due to the concerns cited above cannot be found to violate "contemporary standards of decency," or constitute the denial of "the minimal civilized measure of life's necessities." <u>Chandler</u>, 379 F.3d at 1289-90; <u>Farrow</u>, 320 F.3d at 1243; <u>Rhodes</u>, 452 U.S. at 347, 101 S.Ct. at 2399.  Therefore, summary judgment should be granted in Defendant's favor on this claim as well.

**d.    Equal Protection Claim**

The Constitution requires that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause prevents "governmental decisionmakers from treating differently persons who are in all relevant respects alike." <u>F.S. Royster Guano Co. v. Virginia</u>, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920), *cited in* <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992); <u>Lofton v. Secretary of Dept. of Children and Family Services</u>, 377 F.3d 1275, 1277 (11th Cir. 2004).  Plaintiff has come forward with no evidence to show that any other similarly situated inmates are being treated differently.  The elimination of the JDAP occurred in all Florida prisons, effects all state prisoners, and would appear to restore the equal treatment of all prisoners.  In other words, eliminating the diet also eliminated what could be considered by other prisoners as special treatment.  Summary judgment should be granted to Defendant on this claim as well.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, doc. 26, be **GRANTED** on the merits of all of Plaintiff's claims.

**IN CHAMBERS** at Tallahassee, Florida, on June 11, 2009.


 s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**